**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Kevin LOFTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 5, 2012.

Filed Dec. 7, 2012.

---

David S. Rudenstein, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Johnathan M. Levy, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, ALLEN, and PLATT,* JJ.

OPINION BY BOWES, J.:

Kevin Lofton appeals from the judgment of sentence of life imprisonment without parole imposed following his convictions of second-degree murder, robbery, criminal conspiracy to commit robbery, possession of an instrument of crime, and carrying a firearm without a license. We affirm Appellant's convictions, but, because Appellant committed the murder as a juvenile, we vacate his judgment of sentence and remand for resentencing in accordance with *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

On Christmas evening, 2007, the victim, Andrew Jackson, was visiting with family in Philadelphia. The family was enjoying a game of cards when Mr. Jackson decided to retrieve a case of beer from his car. A group of young men surrounded Mr. Jackson in an attempt to rob him. Mr. Jackson resisted and was shot seven times with a .25 caliber semi-automatic handgun. The victim's cousin and several neighbors heard the shots and observed the attackers flee. In addition, two passersby, a mother and daughter, telephoned police moments before the shooting to report the robbery. However, none of the witnesses could identify the assailants and the case initially remained unsolved.

The investigation renewed over one year later when a witness, who was under arrest at the time, came forward and provided information that he saw Appellant and two others fleeing from the scene and observed Appellant carrying a black handgun. The witness, Terrance Farley, also asserted that Appellant and his co-defendants admitted to shooting someone during a robbery. Mr. Farley, at trial, denied making statements to police that implicated Appellant and two co-defendants, Anwar Shamsid–Deen and Antoine Ray. Instead, he acknowledged only that he identified the three men as persons he knew from the neighborhood.

The police investigation also led them to J.D., a fifteen-year-old juvenile, who was thirteen at the time of the shooting. J.D. resided at Glen Mills, a juvenile facility. Philadelphia police traveled to Glen Mills, retrieved J.D., and returned with him to Philadelphia, a forty-five to fifty minute trip. Police handcuffed J.D. in the vehicle and did not alert his mother of the purpose of their interrogation. J.D. informed police that he was present during the robbery and that Appellant and his co-defendants attempted to rob the victim before Appellant shot him. At trial, J.D. denied inculpating Appellant and his two co-defendants.

Appellant and his two co-defendants were tried jointly. On May 4, 2011, the jury acquitted Appellant of first-degree murder, but adjudicated him guilty of second-degree murder, robbery, conspiracy to commit robbery, and carrying a firearm without a license. The trial court sentenced Appellant, on August 15, 2011, to a mandatory term of life imprisonment based on the murder conviction. Appellant contested the imposition of the mandatory at sentencing, averring it was unconstitutional because he was a juvenile when he committed the crime. Specifically, Appellant argued that the sentence violated his Eighth Amendment right against cruel and unusual punishment and his due process rights under the Fourteenth

---

* Retired Senior Judge assigned to the Superior Court.

Amendment. Appellant also filed a post-sentence motion, which the trial court denied. This appeal ensued. The trial court directed Appellant to file and serve a Pa. R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Pa. R.A.P. 1925(a) decision. The matter is now ready for our review. Appellant presents two questions for our consideration.

I. Is the Defendant entitled to a new trial as the verdict is not supported by the greater weight of the evidence and where the Trial Court abused its discretion in denying a Motion for New Trial?

II. Has the Defendant been denied due process of law and equal protections of the laws under the Constitution of the United States and the Constitution of Pennsylvania and has the Defendant been subject to cruel and unusual punishment where the Defendant, a juvenile at the time that this crime was committed, has been sentenced to life imprisonment without the possibility of parole?

Appellant's brief at 3.

■■■ Appellant labels his initial challenge as a weight-of-the evidence claim. We evaluate such claims under settled precepts.

> [W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003) (citations omit-

ted). Hence, a trial court's denial of a weight claim "is the least assailable of its rulings." *Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 880 (2008). Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve. *Commonwealth v. Tharp*, 574 Pa. 202, 830 A.2d 519, 528 (2003). As our Supreme Court has further explained,

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 752 (2000) (citations omitted). In addition, a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 494 (2009).

Appellant argues that no witness testified in court to observing Appellant shoot the victim, the testimony of the homicide detectives was arrogant, and J.D.'s damaging out-of-court statement was coerced. In the latter two respects, Appellant high-

lights that police did not inform J.D.'s mother that they were going to interview him nor did they instruct her that they were going to remove him from school. Appellant points out that J.D. was not interviewed at the school, but was transported in handcuffs to Philadelphia without being told why he was being taken away. According to Appellant, the police interrogation of J.D. led to involuntary statements that were not reliable and, therefore, the verdict was based on mere conjecture. In support of his conjecture position, Appellant relies on *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993) and *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976).

In *Karkaria*, the defendant was charged with raping his stepsister. On appeal, he presented a sufficiency, not weight, of the evidence claim. The *Karkaria* Court, relying on *Farquharson*, concluded that the testimony of the victim was "so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." *Karkaria, supra* at 1172. Specifically, in *Karkaria*, the victim alleged that her stepbrother sexually assaulted her on a weekly basis for three years while babysitting her on weekends while another stepbrother was not home. The court, nonetheless, recognized that the victim also admitted that the defendant no longer babysat her during the period in which the crimes were alleged to have occurred as well as other inconsistencies.

In *Farquharson*, the defendant, a female psychiatrist, was convicted of murder and conspiracy in the death of another doctor after the defendant's lesbian lover, a former patient, shot and killed the doctor. Although discussing the defendant's position that she could not be convicted based on mere conjecture, the court rejected the surmise and mere conjecture argument therein. Instead, the court concluded that

the defendant's own statements to police provided sufficient "indicium of trustworthiness" of her conspirator's testimony. *Farquharson, supra* at 551.

Our Supreme Court recently discussed both of these cases in *Commonwealth v. Brown*, 52 A.3d 1139 (Pa.2012), and concluded that a claim that a prior inconsistent statement repudiated at trial was too unreliable to prove guilt beyond a reasonable doubt, such as occurred herein, was properly considered a sufficiency of the evidence issue and not a weight claim. In discussing *Karkaria*, the Court explained,

Our Court therefore recognized that, in those extreme situations where witness testimony is so inherently unreliable and contradictory that it makes the jury's choice to believe that evidence an exercise of pure conjecture, any conviction based on that evidence may be reversed on the grounds of evidentiary insufficiency, since no reasonable jury could rely on such evidence to find all of the essential elements of the crime proven beyond a reasonable doubt. Consequently, Appellant's present assertion that the prior inconsistent statements of the Commonwealth's trial witnesses, repudiated at trial, were too unreliable to establish, as a matter of law, his guilt beyond a reasonable doubt is a claim which implicates the sufficiency of the evidence.

*Brown, supra* at 1156 n. 18; *but see id.* at 1190 n. 1 (Castille, C.J. concurring and dissenting) (opining that the issue was a weight of the evidence claim).

We do not dispute that Appellant's legal argument and the phrasing of his issue pertain to the weight of the evidence and not its sufficiency and point out that, unlike the defendant in *Brown, supra*, Appellant did not label the issue as a sufficiency of the evidence claim. Therefore, we do not find that *Brown* requires Appellant's

claim to be treated as a sufficiency of the evidence challenge. Indeed, Appellant acknowledges that, based on J.D.'s and Mr. Farley's out-of-court statements, sufficient evidence existed to support his convictions. Nonetheless, he maintains that his conjecture argument applies equally to a weight claim, and that the jury could only guess as to whether the out-of-court statements were truthful.

The Commonwealth responds that the issue is waived because, although Appellant filed a post-sentence motion, that motion is not part of the certified record and, thus, this Court cannot assume that Appellant preserved his weight challenge. In the alternative, the Commonwealth submits that Appellant's claim fails on the merits. It notes that the credibility of the witnesses is for the fact-finder and that inconsistencies between the trial testimony and the prior statements was for the jury to resolve. The Commonwealth posits that the jury was presented with the fact that J.D. signed a written statement implicating Appellant and determined that his trial testimony wherein he retracted that statement lacked credulity.

■ Assuming *arguendo* that Appellant preserved the issue, we agree with the Commonwealth that it does not entitle him to relief. The jury was clearly apprised of the discrepancies between the out-of-court statements and the in-court testimony both of J.D. and Mr. Farley. Appellant thoroughly explored the police tactics in securing the statements and attempted to highlight, via questioning of police, the possibility that the investigators did not actually transcribe verbatim the statements provided by the witnesses. The jury, nevertheless, was free to reject the in-court testimony of J.D. and Mr. Farley and accept the testimony of police that they accurately transcribed the statements that they were provided as well as the veracity of the out-of-court statements.

Moreover, while the additional witnesses could not conclusively identify Appellant or his co-defendants, their testimony was consistent with other information provided by J.D. Namely, J.D. indicated that Appellant and his two co-defendants attempted to rob the victim while he and several other teens stood at a distance and watched. The victim's cousin described three people as part of the assault and related that several other individuals were nearby. The mother and daughter witnesses provided that a group of six or seven were involved. Hence, this case does not present a factual scenario analogous to the sufficiency issue in *Karkaria* and is closer in line with *Farquharson*, where our Supreme Court rejected the defendant's conjecture argument. Since the prior inconsistent statements of J.D. and Mr. Farley were admissible as substantive evidence, the testimony of the additional witnesses provided an *indicium* of reliability as to J.D.'s and Mr. Farley's out-of-court statements, and the jury is the arbiter of credibility, we hold that the trial court did not abuse its discretion in ruling on the weight issue.

Appellant also contends that his sentence of life imprisonment without the possibility of parole violates his federal due process, equal protection, and Eighth Amendment right against cruel and unusual punishment as well as the corresponding rights under the Pennsylvania Constitution. The Commonwealth concedes that Appellant is entitled to resentencing based on the United States Supreme Court decision in *Miller, supra. See also Commonwealth v. Jovon Knox,* 50 A.3d 749 (Pa.Super.2012); *Commonwealth v. Devon Knox,* 50 A.3d 732 (Pa.Super.2012). We agree that Appellant is entitled to resentencing, and write further to note that, in direct response to *Miller,* the Pennsylvania General Assembly has passed a new law relative to juvenile first-degree and second

degree murderers. 18 Pa.C.S. § 1102.1. However, the law, by its plain language, applies only to those convicted after June 24, 2012.[1]

▬ The legislature failed to contemplate that it is longstanding precedent that persons are generally entitled to the retroactive applicability of decisions when they are pursuing an identical issue on direct appeal. *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146, 148 (1983) ("we hold that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal."); *Commonwealth v. McCormick*, 359 Pa.Super. 461, 519 A.2d 442 (1986) (discussing various retroactivity approaches utilized in Pennsylvania); *cf. Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding new federal constitutional rules apply retroactively to cases on direct appeal).

Thus, juveniles convicted before June 24, 2012, but who are on direct appeal, may be entitled to resentencing despite the legislature's failure to adequately address such juveniles.[2] Since the statute does not, by its explicit terms, apply to those convicted before the *Miller* decision, there still is an absence of statutory authority of how to sentence juveniles convicted before *Miller*. Nonetheless, the law offers guidance to the courts for those convicted on June 24, 2012 or earlier, such as Appellant.

The new legislation provides:

**§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer.**

(a) First degree murder.—A person who has been convicted, after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or of murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of life imprisonment without pa-

---

1. *Miller* was decided on June 25, 2012.

2. As discussed, new federal constitutional rules involving criminal law apply to all cases still pending on direct appeal where the issue is preserved at the trial level and on appeal. *See Commonwealth v. Roney*, 581 Pa. 587, 866 A.2d 351, 359 n. 32 (2005). Appellant, herein, properly preserved the issue; thus, the question of whether a defendant must have specifically raised a constitutional challenge to the sentence to be afforded application of *Miller* is not present. However, where the claim is one that cannot be waived, *i.e.*, a legality of sentence claim, issue preservation is not implicated. *Id.; see also Common-wealth v. Foster*, 609 Pa. 502, 17 A.3d 332, 345 n. 21 (2011) (plurality). Since the issue was preserved, we are not called upon to opine whether a claim that a juvenile sentence of life imprisonment without parole violates cruel and unusual punishment under the federal constitution or the cruel punishment provision of the Pennsylvania Constitution presents a legality of sentence claim. Accordingly, whether a juvenile convicted of first or second degree murder would be entitled to retroactive application of *Miller* on direct appeal where he did not contest the constitutionality of his sentence must be left for another day.

role, or a term of imprisonment, the minimum of which shall be at least 25 years to life.

(b) Notice.—Reasonable notice to the defendant of the Commonwealth's intention to seek a sentence of life imprisonment without parole under subsection (a) shall be provided after conviction and before sentencing.

(c) Second degree murder.—A person who has been convicted, after June 24, 2012, of a murder of the second degree, second degree murder of an unborn child or of murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of imprisonment the minimum of which shall be at least 20 years to life.

(d) Findings.—In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

(e) Minimum sentence.—Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.

(f) Appeal by Commonwealth.—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

The new law distinguishes between defendants convicted of first-degree murder and second-degree murder and further divides punishment for those who were

younger than fifteen years of age at the time of the commission of the crime and those fifteen years of age and over. The legislature, based on *Miller*, also outlined factors that a court must consider in determining whether to sentence the defendant to life imprisonment without parole or one of the other applicable statutory sentencing provisions. We believe such considerations are applicable to Appellant, who was sixteen at the time of the offense. Accordingly, we remand for re-sentencing.

Judgment of sentence vacated. Case remanded for re-sentencing. Jurisdiction relinquished.