J-S39012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JULIO ESQUILIN, | |
| Appellant | No. 542 EDA 2014 |

Appeal from the Judgment of Sentence February 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005768-2012
CP-51-CR-0005783-2012

BEFORE:  BOWES, OTT AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 11, 2015**

Julio Esquilin appeals from the aggregate judgment of sentence of fifty to 100 years incarceration imposed after a jury found him guilty of two counts each of aggravated assault, unlawful contact with a minor, and one count each of rape of a child with serious bodily injury, rape of a child, involuntary deviate sexual intercourse ("IDSI") of a child under the age of thirteen, IDSI of a child under the age of thirteen—with serious bodily injury, and endangering the welfare of a child ("EWOC").  We affirm.

The trial court recounted the heinous salient facts as follows.

> In September, 2011, the defendant Julio Esquilin was living with his girlfriend, Yaritza Vallejo, at 4108 N. 8th street. Yaritza Vallejo is the mother of the first victim, three year old [K.J.].

On September 23, 2011, after the defendant had been babysitting the victim, Ms. Vallejo returned home to find her victim daughter vomiting blood. While the victim was being taken to St. Christopher's Hospital, the defendant ordered the mother to lie to the doctors. The defendant threatened that she would "suffer the consequences" if she did not say that [K.J.] fell over a plastic toy kitchen. Barely alive, the three year old victim was placed on life-support and intubated once she reached the hospital. Her injuries consisted of, among other things, laceration to her liver, spleen, and vagina. All of these injuries were indicative of a sexual assault. A vaginal swab as well as the front and middle crotch of her panties all tested positive for sperm cells. Moreover, DNA isolation procedures were performed on the vaginal swab and panties which subsequently proved that defendant was a statistical match as a contributor of the sperm cells.

About a month later, on October 20, 2011, the defendant was babysitting his other girlfriend's son, the second victim, two year old [D.S]. A few hours after the victim's mother went to work, the defendant called her lamenting that [D.S.] had fallen down the stairs. When the victim's mother returned home, little [D.S.] was groaning. His face bruised, [D.S.] could not hold his head up, open his eyes, or speak. He was transported to St. Christopher's Hospital and placed on life support.

This two year old victim suffered from multiple injuries including severe trauma to his brain, severe bruising, multiple abrasions all over his body, swelling to his penis and scrotum, hemorrhages to both his brain and eyes, as well as air in the abdomen, heart and chest wall cavity resulting from a punctured lung. Bruising to his buttocks was indicative of anal penetration. Seminal fluid was found on the lower and middle back area of the victim's shirt. A brutal violation; the bleeding in his brain caused extensive brain damage that has resulted in hyperactivity, anger tantrums and some memory loss.

Trial Court Opinion, 6/30/14, at 3-4 (internal citations and footnote omitted).

Appellant proceeded to a jury trial on October 22, 2013. The jury returned guilty verdicts on the aforementioned offenses on November 5, 2013. Thereafter, on February 7, 2014, the court sentenced Appellant to the following consecutive sentences: twenty to forty years incarceration on both the rape of a child with serious bodily injury and IDSI charges, and five to ten year terms of imprisonment for both aggravated assault counts.[1] In addition, the court imposed a concurrent sentence of one to two years for the EWOC violation.

Appellant did not file a timely post-sentence motion, but did timely appeal. Trial counsel was permitted to withdraw and the court appointed new counsel. The court directed counsel to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and granted in part a motion for extension. Counsel subsequently submitted his Rule 1925(b) concise statement and the court authored its decision. The matter is now ready for this Court's review. Appellant presents the following issues for this panel's consideration.

---

[1] By statute, since Appellant was found guilty of rape of a child causing serious bodily injury, he was subject to a mandatory period of incarceration of life imprisonment. 18 Pa.C.S. § 3121(e). However, the Commonwealth has not contested Appellant's term of years sentence. Although both this Court and our Supreme Court have considered mandatory sentences to present non-waivable legality of sentence questions, we decline to address the issue absent any briefing.

A. Did the trial court err when it found Mr. Esquilin guilty of the criminal offenses of aggravated assault, unlawful contact with minor and involuntary deviate sexual intercourse (complainant D.S.-C.P. #51-CR-0005768-2012) as the DNA taken with regard to this matter was inconclusive and the balance of the evidence adduced in this matter failed to prove, beyond a reasonable doubt, that Mr. Esquilin committed these criminal offenses?

B. Did the trial court err when it found Mr. Esquilin guilty of the criminal offenses of aggravated assault, unlawful contact with minor and involuntary deviate sexual intercourse (complainant D.S.-C.P. # 51-CR-0005768-2012) as the verdict was against the weight of the evidence?

C. Did the trial court err when it found Mr. Esquilin guilty of the criminal offenses of aggravated assault, unlawful contact with minor and endangering the welfare of children (complainant K.J.-C.P. # 51-CR-0005783-2012), as the verdict was against the weight of the evidence?

D. Did the trial court err when it granted the Commonwealth's "notice of intent to introduce other acts evidence" pursuant to Pennsylvania Rule of Evidence 404(B)?

Appellant's brief at 2.

In performing a sufficiency review, we consider all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*).[2] We view the evidence in a

---

[2] Appellant failed to ensure that a complete record was before this Court. The original certified record only contained transcripts from one day of trial and sentencing. Since Appellant did request transcripts for purposes of this appeal, this Court was able to secure additional transcripts. However, transcripts from several dates were not available. Despite the incomplete record, it is still evident for reasons outlined in the body of this memorandum that the Commonwealth presented sufficient evidence.

light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. *Id*.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. *Id*. This Court does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*.

Appellant does not challenge the sufficiency of the evidence with respect to K.J. His sufficiency challenge relates solely to his aggravated assault, unlawful contact with a minor, and IDSI crimes as to D.S. He contends that, because the DNA evidence as to that victim was inconclusive, the Commonwealth did not prove beyond a reasonable doubt that Appellant assaulted the young victim.

D.S. suffered a hemorrhage to his brain, a punctured lung, and his penis and scrotum were swollen. In addition, there were seminal stains on the back of his shirt and bruises on his buttocks suggestive of anal penetration. The victim's mother acknowledged leaving the child at home

alone with Appellant. Appellant admitted that he was alone with the child immediately before the child's mother returned home and took the child to the hospital. Appellant, however, maintained that the injuries occurred as a result of the child falling down the steps. The doctor who treated the victim testified that the victim's injuries could not have occurred from a fall. The jury was free to reasonably infer that Appellant caused the victim's severe injuries and that involuntary deviate sex acts occurred. Appellant's position is devoid of merit.

Appellant's next two issues relate to the weight of the evidence. A weight claim must be preserved in a timely post-sentence motion. *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012). Appellant, in his Rule 1925(b) statement, acknowledged that he did not file a post-sentence motion. Accordingly, his weight claims are waived.

The final issue Appellant levels on appeal is that the court erred in admitting evidence of other bad acts. Evidence of bad acts is inadmissible to prove that a defendant has bad character or a criminal propensity. *See* Pa.R.E. 404(b). However, bad acts evidence is admissible for a host of reasons including to prove motive, intent, knowledge, absence of mistake, common scheme, to establish identity, and as part of the chain of events that form the history of the case. Pa.R.E. 404(b)(2); *Commonwealth v. Brown*, 52 A.3d 320 (Pa.Super. 2012). The probative value of the bad acts

evidence must also outweigh its prejudicial impact in order to be admissible. *Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008).

The Commonwealth must provide notice that it intends to introduce bad acts evidence. Pa.R.E. 404(b)(3) ("In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial."). We consider the admission of such evidence under an abuse of discretion standard. *Commonwealth v. Patterson*, 91 A.3d 55, 68 (Pa. 2014).

Appellant argues that the trial court erred in permitting the Commonwealth to introduce evidence that Appellant physically abused the mother of K.J. The victim's mother testified that Appellant had placed his hands on her neck and choked her and that the couple frequently fought. According to Appellant, this evidence was only used to prove that he acted in a physically abusive manner in this case.

The Commonwealth responds that the evidence was introduced to explain why the victim's mother initially lied to police and claimed that her daughter injured herself falling over a toy kitchen set. It notes that after she recanted her original story, she submitted that she had lied because Appellant threatened her. According to the Commonwealth, evidence of the past abuse was "relevant to show that she was afraid of [Appellant] and had reason to believe his threats." Commonwealth's brief at 15. We agree.

The credibility of K.J.'s mother was at issue during the trial.  In order to demonstrate why the victim's mother initially lied to police, the Commonwealth produced evidence that Appellant threatened her and had been abusive.  This evidence was admissible not for the purpose of establishing that Appellant committed the acts herein against K.J., but to demonstrate why K.J.'s mother initially protected him.  Indeed, the jury was instructed that it could not consider the evidence of his abuse as evidence of criminal tendencies to infer guilt.  The trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2015